UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **JACKIE LEE SCHAEFER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:20-CV-225-SNLJ |
| | ) |
| **KILOLO KIJAKAZI,** [1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Jackie Lee Schaefer applied for disability insurance benefits under Title II of the Social Security Act. His application was denied, and he appealed the denials to an administrative law judge ("ALJ"). After a hearing, the ALJ found plaintiff was not disabled, and plaintiff now seeks judicial review [#22]. The defendant filed a response brief, but no reply was filed, and the time for doing so has expired.

As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.     Background**

Plaintiff Schaefer was born in 1956 and was 61 years old when he alleges he became disabled on August 17, 2018. He has a high school education and had worked as a setup

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

technician in a factory. Plaintiff has a long history of work-related injuries, but, on his alleged onset date, he injured his right knee at work and underwent surgery a month later.

Plaintiff was doing well after this surgery and making good progress with physical therapy, but he still reported that he had pain. His surgeon, Dr. Nathan Mall, recommended continuing physical therapy. An MRI scan in February 2018 showed no evidence of abnormalities, though plaintiff had weakness in his quadricep muscle. He had pain, but his ACL was stable with no medial or joint line tenderness. He continued to have 4/5 strength in March 2018. By his April 2018 appointment, plaintiff had returned to full duty work. Although he reported that wanted to build up more strength in the right knee, he did not have any problems at work, and he was not in much pain. The examination showed good range of motion in the knee with no tenderness. He had 5/5 strength in the quadriceps, which he had maintained with no formal physical therapy. His doctor recommended physical therapy exercises, and he noted that these exercises were excellent at preventing pain and symptoms related to possible underlying arthritis. The doctor noted that he could return to work full time with no permanent restrictions. The doctor did not believe plaintiff needed any additional medical treatment for this condition. Plaintiff was released to full duty work on April 24, 2018.

In September 2018, plaintiff established care with a new provider for refills of medications for hypertension. He was obese, and he had hernia findings, but he was asymptomatic. He had normal gait and station with normal musculoskeletal and neurological findings. At a follow-up appointment in October 2018, plaintiff had similar physical examination findings. Although he had a cough, his chest x-ray was

normal. In November 2018, his medications were refilled, and he continued to have unremarkable physical examination findings aside from obesity and hernia findings. He had routine follow-up treatment for diabetes, but his examination was unchanged.  He had no acute complaints, and he was ambulating normally.

In December 2018, he attended a six week follow-up for back and knee pain, but he again had the hernia deficits with normal musculoskeletal and neurological findings.  He had similar findings in January 2019, and he was given medications for osteoarthritis. Plaintiff reported pain in his left leg in March 2019, but an MRI showed normal findings. He saw an orthopedist in April 2019, noting that he injured his left knee stepping down from his truck. He had a steady gait, and the knee was stable, but he did have tenderness. He had some decreased strength and testing abnormalities in the left knee, and he was diagnosed with left knee osteoarthritis. He had a differential diagnosis of lumbar disc herniation and lumbar radiculopathy, and he was treated with a cortisone knee injection. In May 2019, plaintiff had no acute complaints. He was obese and had asymptomatic hernia deficits, but his left knee pain was improved. His gait and station were normal.

On December 27, 2019, the ALJ issued his opinion.  The ALJ's decision recognized that plaintiff had medically determinable impairments including knee injury, diabetes, high blood pressure, obesity, and high cholesterol.  [Tr. 13.]

The ALJ stated that he found plaintiff's impairments could be expected to cause the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent…" [Tr. 15.]  The ALJ found

3

that the medical impairments did not constitute "severe impairments," and thus the ALJ found plaintiff was not disabled. Plaintiff appeals.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work

4

activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC

5

and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59, n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and that he had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffered from medical impairments including knee injury, diabetes, high blood pressure, obesity, and high cholesterol, but, as

6

indicated above, the ALJ determine those impairments were not severe. The analysis ended there, and plaintiff was found not disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Plaintiff argues that his case should be remanded because, he says, the ALJ improperly characterized his knee injury as non-severe, failed to include all of plaintiff's medically determinable impairments, and failed to consider the combined effect of all

7

medically determinable impairments. In addition, plaintiff argues the ALJ failed to properly develop the record.

The ALJ characterized plaintiff's knee injury as non-severe. Plaintiff argues that the ALJ incorrectly applied the non-severe standard without applying the proper factors. The severity regulation provides

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). Plaintiff bears the burden of showing that his impairment or combination of impairments are severe. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Additionally, Plaintiff must show that his impairment has lasted or is expected to last for a period of at least 12 months. *See* 20 C.F.R. § 404.1509. This is called the durational requirement. *Id*.

The ALJ noted that, although plaintiff contends his knee injury is severe, plaintiff was released to work full duty with no problems seven months after plaintiff's knee surgery. Plaintiff had told his surgeon he was "not in much pain at all" and that he was able to return back to full-duty work with no problems. [Tr. 311.] Plaintiff had good range of motion and no joint effusion. Although he had had several followup visits indicating that he needed to build up quadriceps strength, he had 5/5 strength at his last visit. [*Id.*] He only indicated he needed to build up more strength in his knee to have full endurance. [*Id.*] The ALJ also cited subsequent normal findings at other examinations in 2018 to show that plaintiff's impairment did not, in fact, last 12 or more continuous months. [Tr. 15 citing Tr. 392, 396,

403, 410, 425-36, and 440.]  The ALJ further noted that plaintiff's statements about the intensity, persistence, and limited effects of his symptoms were inconsistent because he was able to return to work full-time without issue after his right knee surgery.

As for plaintiff's left knee, plaintiff's medical records show normal gait and normal x-ray of plaintiff's left knee despite a report of tenderness in March 2019; although there was mild osteophytic lipping on imaging, plaintiff reported improvement in pain in the left knee, and his gait and station were normal by May 2019.  [Tr. 15 citing Tr. 427.] As the ALJ noted, although plaintiff had complained of pain due to the left knee arthritis, "he reported improvement in pain and again demonstrated normal muscle tone, strength, and range of motion."  [Tr. 16.]

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d  707 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *id*. at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a)). Plaintiff contends that the "non-severe" step should be used only sparingly [Doc. 22 at 10],  but the Eighth Circuit makes clear that

> Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g.*, *Page*, 484 F.3d at 1043–44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir.2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.1997); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir.1996).

*Kirby*, 500 F.3d at 708 (affirming that claimant's hand tremors were not severe).  Plaintiff's arguments hinge on plaintiff's complaints of pain and limitations while he was healing from

9

surgery. Plaintiff also suggests that the evidence that his surgeon reported plaintiff was fit to return to work was outdated because it happened a year and a half before his hearing. Plaintiff fails to point out, however, any record evidence supporting that he had new problems with his right knee.  It is plaintiff's burden to establish the severity of his impairment, and ample evidence supports the ALJ's conclusion that plaintiff's knee injuries are not severe.

In addition to plaintiff's knee complaints, plaintiff was obese and had chronic conditions including diabetes, hypertension, and high cholesterol.  Those conditions however did not exhibit significant examination deficits or more intensive treatment than medication.  The ALJ discussed the normal findings and conservative treatment with medication related to those conditions. [Tr. 15 citing Tr. 424-27.]  The ALJ then discussed plaintiff's obesity in accordance with SSR 19-2p and noted that it did not prevent him from receiving treatment or that it affected his ability to perform basic work activities.  [Tr. 15-16.]  The record shows mild deficits or normal findings on examination with good response to conservative management.  All three chronic conditions are treated with medication, and the record shows no evidence of complication or end organ damage.  If an impairment can be controlled by treatment or medication, it cannot be considered disabling.  *Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016).  The ALJ also considered the combined effects of plaintiff's impairments by discussing plaintiff's obesity and chronic conditions, but the ALJ noted routine management and normal findings related to these conditions.  There is no indication in the record that even the combined effects of the impairments should render any of them "severe."

10

Plaintiff cites workers compensation disability ratings in support of his arguments, but those ratings are neither inherently valuable nor persuasive under the opinion evidence rules. 20 C.F.R. § 404.1520b(c). Such decisions by other government entities about plaintiff's disability are based on the other entity's own rules and is not binding on the SSA. *See* 20 C.F.R. 404.1504.

In sum, plaintiff did not meet his burden of showing his impairments met the durational requirement and that an impairment or combination thereof resulted in more than minimal limitations to his ability to perform basic work activities. Within seven months of his knee surgery, plaintiff was released to work full duty, and he exhibited many normal findings. Subsequent examinations showed minor deficits and conservative management of plaintiff's chronic conditions and complaints. Substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not result in more than minimal limitations to plaintiff's ability to perform basic work activities for 12 or more continuous months.

Finally, plaintiff contends the ALJ improperly failed to exercise discretion in declining to further develop the record. Specifically, plaintiff argues the ALJ should have ordered a consultative examination for plaintiff's arthritis.

The ALJ has a duty to fully and fairly develop the record. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). However, the duty to develop the record is not never-ending, and the ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to order medical tests and examinations only if medical records presented to him do not give sufficient medical evidence to determine if claimant is disabled. *Id*. An ALJ is permitted, however, to issue a decision

11

without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Kamann*, 721 F.3d at 950.  Here, the record was sufficient to determine plaintiff was not disabled. Although plaintiff argues that the ALJ should have ordered a consultative examination to assess his osteoarthritis, the medical records had physical examination findings showing mostly normal musculoskeletal findings as discussed above. Plaintiff also had mild findings or normal findings on imaging.  [Tr. 452-53.] Furthermore, examination records showed no acute complaints or complaints related to osteoarthritis. [Tr. 388, 392, and 403.]  When he did have complaints of knee and back pain in December 2018, plaintiff had normal musculoskeletal, neurological, and back findings. [Tr. 437, 440.]  The ALJ discussed the physical examination findings from 2018 and 2019 in his decision, noting many normal findings, including normal gait and station. [Tr. 15.] These physical examination findings provided a sufficient basis for the ALJ's decision, and remand is not required.

## VI.  Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [#1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 14th day of February, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE